IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEO SHUMACHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| NORTONLIFELOCK INC., SUSAN P. BARSAMIAN, ERIC K. BRANDT, FRANK E. DANGEARD, NORA M. DENZEL, PETER A. FELD, KENNETH Y. HAO, EMILY HEATH, VINCENT PILETTE, and SHERRESE M. SMITH, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Leo Shumacher ("Plaintiff"), on behalf of himself and upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. This action arises from a proposed transaction (the "Transaction") through which NortonLifeLock Inc. ("NortonLifeLock" or the "Company") is attempting to acquire Avast plc ("Avast") through NortonLifeLock's subsidiary Nitro Bidco Limited.

2. On August 10, 2021, NortonLifeLock and Avast issued a joint press release announcing that they had entered into a Co-operation Agreement, dated August 10, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, Avast shareholders will be entitled to elect to receive either: (i) $7.61 in cash and 0.0302 of a share of Company common stock; or (ii) $2.37 in cash and 0.1937 of a Company share (the "Merger Consideration").

3.      On October 4, 2021, NortonLifeLock filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that NortonLifeLock stockholders vote in favor of the issuance of new Company stock in connection with the Transaction (the "Stock Issuance"), omits or misrepresents material information concerning, among other things: (i) NortonLifeLock's and Avast's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Evercore Group L.L.C. ("Evercore").

4.      The Proxy Statement omits material information with respect to the Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of NortonLifeLock.

9. Defendant NortonLifeLock is a Delaware corporation, with its principal executive offices located at 60 E. Rio Salado Parkway, Suite 1000, Tempe, Arizona 85281 and offices located in Culver City, California. NortonLifeLock is a global leader in consumer Cyber Safety, protecting and empowering people to live their digital lives safely.

10. Defendant Susan P. Barsamian has been a director of the Company since 2019.

11. Defendant Eric K. Brandt has been a director of the Company since 2020.

12. Defendant Frank E. Dangeard has been Chairman of the Board of Directors ("Board") since December 2019, and a director of the Company since January 2007.

13. Defendant Nora M. Denzel has been a director of the Company since 2019.

14. Defendant Peter A. Feld has been a director of the Company since 2018.

15. Defendant Kenneth Y. Hao has been a director of the Company since March 2016.

16. Defendant Emily Heath has been a director of the Company since January 2021.

17. Defendant Vincent Pilette is Chief Executive Officer of the Company and has been a director since 2019.

18. Defendant Sherrese M. Smith has been a director of the Company since January 2021.

19. Defendants identified in paragraphs 10-18 are collectively referred to herein as the "Individual Defendants."

**FACTUAL BACKGROUND**

**Background of the Company and the Transaction**

20.     Founded in 1982, NortonLifeLock is a leading provider of consumer cyber safety solutions built around protecting and empowering people to live their digital lives safely. NortonLifeLock serves over 80 million users in more than 150 countries, including 23 million direct customers.

21.     NortonLifeLock's service offerings is positioned across three key cyber safety pillars: (i) Security, which includes providing protection for PCs, Macs and mobile devices against malware, viruses, adware, ransomware and other online threats; (ii) Identity Protection, which includes monitoring, alerts and restoration services to protect the safety of customers; and (iii) Online Privacy, which provides enhanced security and online privacy through an encrypted data tunnel and other privacy monitoring services.

22.     On July 27, 2021, NortonLifeLock announced its first quarter fiscal year 2022 financial results. GAAP revenue was $686 million during the quarter, up 12% compared to the same quarter of the prior year. First quarter non-GAAP diluted EPS was $0.42, up 35% year over year. Non-GAAP operating margin was 51.2%, up 410 bps from the prior year quarter. Bookings increased 12% to $660 million. Direct customer count was 23.1 million, up 2.6 million from the year ago period.

23.     On August 10, 2021, NortonLifeLock and Avast issued a joint press release announcing the Transaction. According to the press release announcing the Transaction:

> TEMPE, Ariz. & PRAGUE & LONDON -- NortonLifeLock (NASDAQ: NLOK), a global leader in consumer Cyber Safety, and Avast (LSE: AVST), a global leader in digital security and privacy, are pleased to announce that they have reached agreement on the terms of a recommended merger of Avast with NortonLifeLock, in the form of a recommended offer by NortonLifeLock, for the entire issued and to be issued ordinary share capital of Avast.

Under the terms of the merger Avast shareholders will be entitled to receive a combination of cash consideration and newly issued shares in NortonLifeLock with alternative consideration elections available. Based on NortonLifeLock's closing share price of USD 27.20 on July 13, 2021 (being the last trading day for NortonLifeLock shares before market speculation began in relation to the merger on July 14, 2021, resulting in the commencement of the offer period), the merger values Avast's entire issued and to be issued ordinary share capital between approximately USD 8.1B and USD 8.6B, depending on Avast shareholders' elections.

The boards of NortonLifeLock and Avast believe that the merger has compelling strategic and financial rationale and represents an attractive opportunity to create a new, industry-leading consumer Cyber Safety business, leveraging the established brands, technology and innovation of both groups to deliver substantial benefits to consumers, shareholders, and other stakeholders.

"This transaction is a huge step forward for consumer Cyber Safety and will ultimately enable us to achieve our vision to protect and empower people to live their digital lives safely," said Vincent Pilette, Chief Executive Officer of NortonLifeLock. "With this combination, we can strengthen our Cyber Safety platform and make it available to more than 500 million users. We will also have the ability to further accelerate innovation to transform Cyber Safety."

"At a time when global cyber threats are growing, yet cyber safety penetration remains very low, together with NortonLifeLock, we will be able to accelerate our shared vision of providing holistic cyber protection for consumers around the globe," said Ondřej Vlček, Chief Executive Officer of Avast. "Our talented teams will have better opportunities to innovate and develop enhanced solutions and services, with improved capabilities from access to superior data insights. Through our well-stablished brands, greater geographic diversification and access to a larger global user base, the combined businesses will be poised to access the significant growth opportunity that exists worldwide."

**Strategic and Financial Benefits**

• Accelerates the transformation of consumer Cyber Safety with over 500 million users;

• Combines Avast's strength in privacy and NortonLifeLock's strength in identity, creating a broad and complementary product portfolio, beyond core security and towards adjacent trust-based solutions;

• Strengthens geographic diversification and facilitates expansion into the SOHO / VSB segments;

• Unlocks significant value creation through approximately USD 280 million of annual gross cost synergies, with additional upside potential from new reinvestment capacity for innovation and growth;

• Brings together two strong and highly experienced consumer focused management teams.

The Merger will also enhance the financial profile of the combined company through increased scale, long-term growth, cost synergies with reinvestment capacity and strong cash flow generation supported by a resilient balance sheet, and is expected to drive double-digit EPS accretion within the first full year following completion of the Merger and double-digit revenue growth in the long-term

**Organization and Management**

Following the completion of the transaction, NortonLifeLock's CEO, Vincent Pilette, will remain CEO, NortonLifeLock's CFO, Natalie Derse, will remain CFO, and Avast's CEO, Ondřej Vlček, is expected to join NortonLifeLock as President and become a member of the NortonLifeLock Board of Directors. In addition, Pavel Baudiš, a cofounder and current director of Avast, is expected to join the NortonLifeLock Board as an independent director.

On completion of the merger, the combined company will be dual headquartered in Prague, Czech Republic, and Tempe, Arizona, USA, and will have a significant presence in the Czech Republic. The combined company will be listed on NASDAQ.

**The Proxy Statement Contains Material Omissions**

24. On October 4, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Transaction.

25. As set forth below, the Proxy Statement omits material information.

26. <u>First</u>, the Proxy Statement fails to disclose material information concerning NortonLifeLock's and Avast's financial projections.

27. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Evercore's fairness opinion, Evercore reviewed "certain publicly available projected financial and

operating data relating to NortonLifeLock and Avast and extrapolations thereof, which were approved for Evercore's use by NortonLifeLock's management." Accordingly, the Proxy Statement should have, but failed to, provide certain information in the projections that NortonLifeLock's management provided to the Board and Evercore.

28. Notably, Defendants failed to disclose the line items underlying Adjusted EBITDA, Adjusted Net Income, and Adjusted Unlevered Free Cash Flow for both NortonLifeLock and Avast. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Stock Issuance.

29. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Transaction.

30. Second, the Proxy Statement fails to disclose material information regarding the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Evercore. The Proxy Statement describes Evercore's fairness opinion and the analyses supporting that opinion. That description, however, omits key inputs and assumptions underlying these analyses. Without this information, as described below, NortonLifeLock's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining whether to vote in favor of the Transaction or seek appraisal.

31. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

32. Regarding the Selected Publicly Traded Companies Analysis—Avast, the Proxy Statement fails to disclose the multiples for FY 2022E EBITDA and FY 2022 P/E for each selected

7

company.

33. Regarding the Selected Publicly Traded Companies Analysis— NortonLifeLock, the Proxy Statement fails to disclose the multiples for CY 2022E EBITDA and CY 2022 P/E for each selected company.

34. Regarding the Discounted Cash Flow Analysis—Avast, the Proxy Statement fails to disclose the number of fully diluted shares of Avast. The Proxy Statement also fails to disclose Avast's net debt as of June 30, 2021. And the Proxy Statement fails to disclose the inputs and assumptions underlying the discount rates of 8.0% to 9.0% and growth rates of 2.0% to 3.0%.

35. Regarding the Discounted Cash Flow Analysis—NortonLifeLock, the Proxy Statement fails to disclose the number of fully diluted shares of the Company. The Proxy also fails to disclose the Company's net debt as of July 2, 2021. And the Proxy Statement fails to disclose the inputs and assumptions underlying the discount rates of 8.0% to 9.0% and growth rates of 2.0% to 3.0%.

36. Regarding the Equity Research Analyst Price Targets Analysis, the Proxy Statement fails to disclose each of the price targets utilized in the analysis.

37. Regarding the Premiums Paid Analysis, the Proxy Statement fails to disclose the transactions selected for the analysis, as well as the premiums for each of the selected transactions.

38. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy Statement omits the material information concerning the Stock Issuance and the Transaction and contains the materially incomplete and misleading information discussed above.

39. Further, the Proxy indicates that on August 10, 2021, Evercore reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger

Consideration was fair, from a financial point of view, to NortonLifeLock stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Evercore's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

40. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

41. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and NortonLifeLock

43. Plaintiff repeats all previous allegations as if set forth in full.

44. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

45. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the background of the Transaction, and the data and inputs underlying the financial valuation analyses that support the

fairness opinion provided by Evercore. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Transaction or seek to exercise their appraisal rights.

47. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

49. Plaintiff repeats all previous allegations as if set forth in full.

50. The Individual Defendants acted as controlling persons of NortonLifeLock within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of NortonLifeLock and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause

them to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Transaction. They were thus directly involved in the making of the Proxy Statement.

53. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Preliminarily and permanently enjoin defendants, and all persons acting in concert with them from proceeding with, consummating or closing the Transaction;

B. In the event defendants consummate the Transaction, rescind and set it aside or award rescissory damages;

C. Direct the Individual Defendants to disseminate a supplemental or amended Proxy Statement that does not contain untrue statements of material fact and that states all material facts necessary to make the statements contained therein not misleading;

D. Declare that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Award Plaintiff all attorneys' fees, expert fees, and expenses incurred in prosecuting this action; and

F. Award all other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 28, 2021

**GRABAR LAW OFFICE**

By: *Joshua H. Grabar*
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

**C.O. LAW, APC**
Clark Ovruchesky
2404 Broadway, Suite 150
San Diego, CA 92102
619-356-8960
co@colawcalifornia.com

*Counsel for Plaintiff*